**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TATIANA BENJAMIN, CHRISTINE CONTRERAS, NATASHA FREEMAN, ROBIN GLAUSER, and ANTHONY ROGERS Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) | Case No. _____  <u>CLASS ACTION</u> |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| GLAXOSMITHKLINE LLC; KENVUE, INC.; MCNEIL CONSUMER HEALTHCARE; PROCTER & GAMBLE COMPANY; RECKITT BENCKISER LLC; and WALMART, INC., | ) ) ) ) ) ) | DEMAND FOR JURY TRIAL |
| Defendants. | ) ) | |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiffs Tatiana Benjamin, Christine Contreras, Natasha Freeman, Robin Glauser, and Anthony Rogers (collectively, "Plaintiffs"), individually and on behalf of all members of the public similarly situated, upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, allege as follows:

## INTRODUCTION

1.      Plaintiffs seek damages and equitable relief, individually and on behalf of all other Class members, for Defendants' sales of products to be taken orally containing phenylephrine, a compound that purportedly acts as a decongestant, but that Defendants have long known does no such thing. Defendants sold these phenylephrine-containing purported decongestants anyway, generating billions of dollars in sales in the last year alone.

2.      Phenylephrine is one of two compounds found in nasal decongestants administered orally and offered for sale on store shelves. The other compound is pseudoephedrine. Pseudoephedrine itself is effective as a decongestant. However, purchasing pseudoephedrine is often inconvenient for a consumer because: (a) pseudoephedrine has been used as an ingredient in illicit methamphetamine laboratories; (b) products containing it are usually placed behind store counters or in locked cabinets; and (c) purchasers are often forced to leave personal information every time they purchase it or are otherwise limited in the number of pseudoephedrine-containing medications they can buy. Consumers are naturally attracted to a decongestant that can be purchased without attendant inconvenience.

3.      By contrast, phenylephrine-containing products have no such restrictions and are not subject to a highly inconvenient buying process. Phenylephrine is found in many popular over-the-counter oral medications that purportedly act as decongestants—the "Decongestant Products"—including such popular products produced and/or sold by Defendants, including, but

1

not limited to, Theraflu (GlaxoSmithKline), Sudafed PE (Kenvue[1]/McNeil Consumer Healthcare), Tylenol Cold & Flu Severe (Kenvue/McNeil); Benadryl Allergy Plus (Kenvue/McNeil); DayQuil and NyQuil Severe Cold & Flu (Procter & Gamble Company); along with comparable generic Decongestant Products produced and sold by, among others, Defendant Walmart, Inc.

4.      Last year alone, nearly $1.8 billion in sales of phenylephrine-containing purported decongestants took place in the United States across more than 250 products, accounting for approximately 80% of the market for over-the-counter decongestants.

5.      Unknown to the public but known to the manufacturers and distributers in this lucrative market, phenylephrine taken orally is ineffective. It provides no relief for congestion, and is no better than a placebo, like a sugar pill, as a decongestant when taken orally.

6.      Since at least 2007, scientific studies using modern testing methodologies and rigors have, time and again, shown that phenylephrine taken orally is ineffective. Even still, rather than acknowledge the truth of these studies, manufacturers and distributers, like Defendants, have continued to market and sell their products with phenylephrine as effective decongestant medicine.

7.      As one pharmacist who has led the examination of the efficacy of phenylephrine summarized it, "if you have a stuffy nose and you take this medicine, you will still have a stuffy nose."

8.      This fact did not discourage Defendants continuing to sell phenylephrine products and to charge a premium price for those ineffective products.

9.      Had Plaintiffs known that the phenylephrine-containing products were ineffective as a nasal decongestant, they would not have purchased them or paid substantially less for them.

---

[1]     As noted below, Kenvue is a company, founded in February 2022, that prior to a spinoff had served as the Consumer Healthcare division of Johnson & Johnson. On information and belief, all assets and liabilities associated with the Decongestant Products that had been manufactured, marketed, and/or sold by Johnson & Johnson are now owned by Kenvue.

10.      Accordingly, Plaintiffs, on behalf of themselves and all other purchasers of Defendants' phenylephrine products, seek to hold Defendants accountable for their deceptions, breaches of warranties, and violations of consumer protection statutes. Defendants knew these products were ineffectual. They marketed and sold them anyway.

**PARTIES**

11.      Plaintiff Tatiana Benjamin is a resident and citizen of New York. In 2023, Plaintiff Benjamin had sinus congestion associated with a cold and purchased from Walmart the Decongestant Product Theraflu Severe Cold Relief, manufactured by Defendant GlaxoSmithKline and containing phenylephrine for purported decongestant relief. Plaintiff Benjamin paid a premium price for Theraflu because it/they contained phenylephrine, but the phenylephrine contained in the Theraflu was ineffective in relieving Plaintiff Benjamin's congestion.

12.      In the past, Plaintiff Benjamin also purchased other Decongestant Products, including, but not limited to, Benadryl Allergy Plus (Kenvue/McNeil), Sudafed PE (Kenvue/McNeil), Tylenol Cold and Flu Severe (Kenvue/McNeil), and NyQuil Severe Cold and Flu (Procter & Gamble). Each of these Decongestant Products commanded a premium price because they contained phenylephrine, but the phenylephrine in each of these Decongestant Products was ineffective in relieving congestion. All of Plaintiff Benjamin's relevant purchases occurred in New York.

13.      Plaintiff Christine Contreras is a resident and citizen of Arizona. In or around August 2023, Plaintiff Contreras had sinus congestion associated with a cold and purchased from Fry's Marketplace in Buckeye, Arizona the Decongestant Product Theraflu Severe Cold Relief, manufactured by Defendant GlaxoSmithKline and containing phenylephrine for purported decongestant relief. Plaintiff Contreras paid a premium price for Theraflu because it contained

phenylephrine, but the phenylephrine contained in the Theraflu was ineffective in relieving Plaintiff Contreras's congestion.

14.    In the past, Plaintiff Contreras also purchased other Decongestant Products, including, but not limited to, Sudafed PE (Kenvue/McNeil), Tylenol Cold and Flu Severe (Kenvue/McNeil), Benadryl Allergy Plus (Kenvue/McNeil), NyQuil Severe Cold and Flu (Procter & Gamble), and Mucinex Sinus Max (Reckitt Benckiser). Each of these Decongestant Products commanded a premium price because they contained phenylephrine, but the phenylephrine in each of these Decongestant Products was ineffective in relieving congestion. All of Plaintiff Contreras's relevant purchases occurred in Arizona.

15.    Plaintiff Natasha Freeman is a resident and citizen of Illinois. In or around January 2023, Plaintiff Freeman had sinus congestion associated with a cold and purchased from Walgreens the Decongestant Product Theraflu Severe Cold Relief, manufactured by Defendant GlaxoSmithKline and containing phenylephrine for purported decongestant relief. Plaintiff Freeman paid a premium price for Theraflu because it contained phenylephrine, but the phenylephrine contained in the Theraflu was ineffective in relieving Plaintiff Freeman's congestion.

16.    In the past, Plaintiff Freeman also purchased other Decongestant Products, including, but not limited to, Benadryl Allergy Plus (Kenvue/McNeil), NyQuil Severe Cold and Flu (Procter & Gamble), and Mucinex Sinus Max (Reckitt). Each of these Decongestant Products commanded a premium price because they contained phenylephrine, but the phenylephrine in each of these Decongestant Products was ineffective in relieving congestion. All of Plaintiff Freeman's relevant purchases occurred in Illinois.

17.    Plaintiff Robin Glauser is a resident and citizen of Arkansas. In 2023, Plaintiff Glauser had sinus congestion associated with a cold and purchased from Walmart the

Decongestant Products Flonase Headache and Allergy Relief and Theraflu Severe Cold Relief, manufactured by Defendant GlaxoSmithKline and containing phenylephrine for purported decongestant relief. Plaintiff Glauser paid a premium price for Flonase and Theraflu because they contained phenylephrine, but the phenylephrine contained in the Flonase and Theraflu was ineffective in relieving Plaintiff Glauser's congestion.

18.     In the past, Plaintiff Glauser also purchased other Decongestant Products, including, but not limited to, Equate generic equivalents of NyQuil and Theraflu (Walmart), Benadryl Allergy Plus (Kenvue/McNeil), Sudafed (Kenvue/McNeil), and NyQuil Severe Cold and Flu (Procter & Gamble). Each of these Decongestant Products commanded a premium price because they contained phenylephrine, but the phenylephrine in each of these Decongestant Products was ineffective in relieving congestion. All of Plaintiff Glauser's relevant purchases occurred in Arkansas.

19.     Plaintiff Anthony Rogers is a resident and citizen of Pennsylvania. In September 2023, Plaintiff Rogers purchased from CVS the Decongestant Product Vicks Dayquil/Nyquil, manufactured by Defendant Procter and Gamble and containing phenylephrine for purported decongestant relief. Plaintiff Rogers paid a premium price for Dayquil/Nyquil because it contained phenylephrine, but the phenylephrine contained in the Dayquil/Nyquil was ineffective in relieving Plaintiff Rogers' congestion.

20.     Plaintiff Rogers is diagnosed by Veterans' Affairs with chronic sinusitis and allergic rhinitis. In order to relieve the congestion associated with these diagnoses, Plaintiff Rogers also purchased other Decongestant Products, including, but not limited to, Benadryl Allergy Plus (Kenvue/McNeil), Tylenol Cough and Cold (Kenvue/McNeil), and Mucinex Sinus-Max (Reckitt). Each of these Decongestant Products commanded a premium price because they contained

phenylephrine, but the phenylephrine in each of these Decongestant Products was ineffective in relieving congestion. All of Plaintiff Rogers' relevant purchases occurred in Pennsylvania.

21.     Defendant GlaxoSmithKline LLC ("GSK") is a Delaware corporation with its headquarters and principal place of business in Philadelphia, Pennsylvania. GlaxoSmithKline is a wholly owned subsidiary of GlaxoSmithKline PLC, a public limited company registered in England and Wales. GlaxoSmithKline is a biopharmaceutical company that, among other Decongestant Products, manufactures and markets Theraflu.

22.     Defendant Kenvue Inc. ("Kenvue") is an American consumer health company, and formerly the consumer healthcare division of Johnson & Johnson. Kenvue is headquartered in Skillman, New Jersey. It wholly owns Defendant McNeil Consumer Healthcare. On information and belief, all assets and liabilities associated with the Decongestant Products that had been manufactured, marketed, and/or sold by Johnson & Johnson are now owned by Defendant Kenvue.

23.     Defendant McNeil Consumer Healthcare ("McNeil") is wholly owned by Defendant Kenvue, with headquarters in Fort Washington, Pennsylvania. McNeil manufactures and markets numerous Decongestant Products, including, but not limited to, Sudafed PE, a purported decongestant containing phenylephrine.

24.     Defendant Procter & Gamble Company ("P&G") is an American multinational consumer goods corporation headquartered in Cincinnati, Ohio. Among other Decongestant Products, Procter & Gamble manufactures and markets DayQuil and NyQuil.

25.     Defendant Reckitt Benckiser LLC ("Reckitt") is a Delaware limited liability corporation with its headquarters and principal place of business in Parsippany, New Jersey. Reckitt is a wholly owned subsidiary of Reckitt Benckiser Group PLC, a public limited company registered in England and Wales. Among other Decongestant Products, Reckitt manufacturers and

6

markets Mucinex products containing phenylephrine and purporting to act as decongestants. Reckitt sells its Decongestant Products nationwide, including in Louisiana.

26.    Defendant Walmart, Inc. ("Walmart") is a Delaware corporation with its principal place of business in Bentonville, Arkansas. Walmart operates approximately 4,600 stores in all 50 states, the District of Columbia, and Puerto Rico, including approximately 130 stores in Pennsylvania.

## JURISDICTION & VENUE

27.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

28.    This Court has personal jurisdiction over Defendants by virtue of their transacting and doing business in this District. Defendants have each purposefully availed themselves of the benefits and protections of the Commonwealth of Pennsylvania by continuously and systematically conducting substantial business in Pennsylvania. Each Defendant markets and distributes its products in Pennsylvania.

29.    The Court additionally and independently has personal jurisdiction over Defendants GSK and McNeil because GSK and McNeil are located and operate their headquarters in the Commonwealth of Pennsylvania.

30.    Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendants maintain

key business operations in this District, and market and sell their products, including Decongestant Products, in this District.

## FACTUAL ALLEGATIONS

### *The Market for Decongestants*

31.    The market for products that purportedly relieve nasal congestion is worth over $2 billion annually and includes over 250 products.

32.    The two leading ingredients purportedly used to relieve nasal congestion are phenylephrine and pseudoephedrine. These active ingredients are sold as the only active ingredients in some products, and one or both of them are included as active ingredients in multi-symptom products.

33.    Pseudoephedrine-based products are useful as decongestants. However, due to the misuse of pseudoephedrine as a base to produce illegal methamphetamines, since 2006 federal law has made products containing pseudoephedrine, while available "over the counter" in the sense that they can, for the most part, be bought without a doctor's prescription, inconvenient to buy. The products are usually behind a pharmacy counter in locked containers, consumers are limited in the amount they can purchase, and purchasers are often required to provide personal identification and other information to track the amount of the substance purchased.

34.    Accordingly, the best-selling products in the decongestant market have been those that use phenylephrine, which account for approximately 80% of the market for over-the-counter decongestants. In the last year alone, nearly $1.8 billion of phenylephrine-based purported decongestants were sold.

*The Truth About Phenylephrine*

35.    The problem—until recently unknown to the public, but well known to Defendants—is that phenylephrine does not work when taken orally. While sold as a decongestant, it provides no better relief from decongestion than a placebo.

36.    Scientists have long reported that phenylephrine is ineffective. As Leslie Hendeles, PharmD and Randy Hatton, PharmD succinctly stated in the *Journal of Allergy and Clinical Immunology* in May 2006, "Phenylephrine…is unlikely to provide relief of nasal congestion. It has poor oral bioavailability because of extensive first-pass metabolism in the gut and liver…. Moreover, in a randomized, double blind, placebo-controlled, crossover study of 3 oral decongestants in 20 patients with chronic nasal stuffiness, phenylephrine was no more effective than placebo in reducing nasal airway resistance."[2]

37.    Scientific studies using modern testing methodologies (using good clinical practices) and rigors have repeatedly shown that phenylephrine is ineffective. On September 11 and September 12, 2023, the FDA held a non-prescription Drug Advisory Committee Meeting to discuss the efficacy of oral phenylephrine as a nasal decongestant. The Advisory Committee explained that multiple studies have shown phenylephrine to be no better than a placebo.

38.    For example, the committee described a study conducted by Johnson & Johnson from 2017 to 2018 to evaluate an oral phenylephrine product (Defendant Kenvue was until this

---

[2]    Leslie Handeles, PharmD and Randy Hatton, Pharm D, *Oral phenylephrine: An ineffective replacement for pseudoephedrine?*, 118 J. ALLERGY AND CLINICAL IMMUNOLOGY 1 (May 1, 2006) (citing Bickerman HA. Physiologic and pharmacologic studies on nasal airway resistance Presented at a conference sponsored by the Scientific Development Committee of the Proprietary Association. Washington, DC. December 8, 1971), https://www.jacionline.org/article/S0091-6749(06)00633-6/fulltext#bib5.

year part of Johnson & Johnson). As explained by the panel, the trial "suggest[ed] no beneficial effect [of phenylephrine] when compared with placebo."[3]

39.     This was hardly surprising. In 2015, Meltzer et al. conducted a dose-response study relating to the treatment of nasal congestion. The study subjects were given various combinations of commercially available oral phenylephrine tablets and a placebo. The "commercially available" tablet was reported in an editorial published in the same journal as the study to have been Johnson & Johnson's (now Kenvue's) Sudafed PE.[4] The results of the study were unequivocal. As the authors put it, "we failed to identify a dose for [phenylephrine]…that was significantly more effective than placebo in relieving nasal congestion…."[5]

40.     Nevertheless, Johnson & Johnson—and now freshly spun-off Kenvue—through its subsidiary Defendant McNeil continued to manufacture and sell its phenylephrine products, including Sudafed PE.

41.     Defendants, as manufacturers of the phenylephrine-based products, were each aware of the studies suggesting that phenylephrine is ineffective as a nasal decongestant.

42.     As one pharmacist who has led the examination of the efficacy of phenylephrine summarized it, "if you have a stuffy nose and you take this medicine, you will still have a stuffy nose."

---

[3]    *See* NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 52, https://www.fda.gov/media/171915/download.

[4]    Hatton & Hendeles, *Over the Counter Oral Phenylephrine: A Placebo for Nasal Congestion*, J. ALLERGY AND CLINICAL IMMUNOLOGY PRAC. (Sept/Oct. 2015), https://pubmed.ncbi.nlm.nih.gov/26362551/.

[5]    Meltzer *et al.*, *Oral Phenylephrine HCI for Nasal Congestion in Seasonal Allergic Rhinitis: A randomized, Open-label, Placebo-controlled Study*, 3 J. ALLERGY AND CLINICAL IMMUNOLOGY PRAC. 6 (Sept/Oct 2015), https://www.jaci-inpractice.org/action/showPdf?pii=S2213-2198%2815%2900252-4

## TOLLING OF ALL APPLICABLE STATUTES OF LIMITATIONS

### *Discovery Rule Tolling*

43.    Plaintiffs and the other Class members had no way of knowing about Defendants' deception concerning their Decongestant Products. As consumers, they reasonably believed that the phenylephrine contained within the Decongestant Products offered for sale could act as decongestants.

44.    Within the time period of any applicable statutes of limitation, Plaintiffs and the other Class members could not have discovered through the exercise of reasonable diligence that Defendants' Decongestant Products were ineffective as advertised.

45.    Plaintiffs and the other Class members did not discover and did not know facts that would have caused a reasonable person to suspect that Defendants did not report information within their knowledge about the ineffectiveness of their Decongestant Products; nor would a reasonable and diligent investigation have disclosed that Defendants had concealed such information about the products' efficacy, which was only known by Plaintiffs and the other Class members after the FDA decision in September 2023.

46.    For these reasons, all applicable statutes of limitation have been tolled through the discovery rule for the asserted claims.

### *Fraudulent Concealment Tolling*

47.    All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time-period relevant to this action.

48.    Rather than disclose the truth about their Decongestant Products, Defendants falsely represented these products as ones that would relieve congestion.

***Estoppel***

49.     Defendants were under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of their Decongestant Products.

50.     Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of their Decongestant Products.

51.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

52.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

53.     Plaintiffs seek to represent the following Classes:

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline (the "GSK Nationwide Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline in the State of Arizona (the "GSK Arizona Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline in the State of Illinois (the "GSK Illinois Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline in the State of New York (the "GSK New York Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeil Consumer Healthcare/Kenvue (the "Kenvue Nationwide Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeil Consumer Healthcare/Kenvue in the State of Arizona (the "Kenvue Arizona Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeil Consumer Healthcare/Kenvue in the State of Illinois (the "Kenvue Illinois Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeil Consumer Healthcare/Kenvue in the State of New York (the "Kenvue New York Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeil Consumer Healthcare/Kenvue in the State of Pennsylvania (the "Kenvue Pennsylvania Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble (the "Procter & Gamble Nationwide Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble in the State of Arizona (the "Procter & Gamble Arizona Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble in the State of Illinois (the "Procter & Gamble Illinois Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble in the State of New York (the "Procter & Gamble New York Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble in the State of Pennsylvania (the "Procter & Gamble Pennsylvania Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser (the "Reckitt Nationwide Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser in the State of Arizona (the "Reckitt Arizona Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser in the State of Illinois (the "Reckitt Illinois Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser in the State of Pennsylvania (the "Reckitt Pennsylvania Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Walmart (the "Walmart Nationwide Class").

54.    Excluded from the Classes are the Defendants, and any of the Defendants'

members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns;

the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

55.    This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

56.    Plaintiffs reserve the right before the Court to determine whether certification of other classes or subclasses are appropriate.

57.    Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

58.    **Numerosity: Rule 23(a)(1):** The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Plaintiffs are informed and believe that there are hundreds of thousands of members of the Classes based on the size of the market for decongestant products and Defendants' share of that market, but the precise number of Class members is unknown to Plaintiffs.

59.    **Commonality and Predominance: Rules 23(a)(2) and (b)(3):** This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

(a)    when Defendants knew that phenylephrine was ineffective as a decongestant;

(b)    whether Defendants sold Decongestant Products as effective;

(c)    what measures Defendants took to conceal the truth about their Decongestant Products;

(d)    Defendants' duty to disclose the truth about their Decongestant Products;

14

(e)    whether Plaintiffs and the other Class members overpaid for Defendants' Decongestant Products; and

(f)    whether Plaintiffs and the other Class members are entitled to equitable and injunctive relief.

60.    **Typicality: Rule 23(a)(3):** Plaintiffs' claims are typical of the other Class Members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above. Plaintiffs suffered damages as a direct proximate result of the same wrongful practices in which Defendants engaged.

61.    **Adequacy: Rule 23(a)(4):** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class's interests.

62.    **Declaratory and Injunctive Relief: Rule 23(b)(2):** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making declaratory and injunctive relief appropriate, with respect to each Class as a whole.

63.    **Superiority: Rule 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in managing this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Classes to seek redress for Defendants' wrongful conduct individually. Even if Class members could afford individual litigation, such litigation creates a potential for inconsistent or contradictory judgments. It increases the delay and expense to all

15

parties and the court system. By contrast, a class action is suited and intended to manage such difficulties and provide the benefits of uniform and common adjudication, economy of scale, and comprehensive supervision.

## CHOICE OF LAW

64.     Because Plaintiffs bring this Complaint in Pennsylvania, Pennsylvania's choice of law regime governs the state law allegations in this Complaint. Under Pennsylvania's choice of law rules, Pennsylvania law applies to all Class members' claims, regardless of their state of residence or state of purchase, as there is no conflict between Pennsylvania's law and the laws of other states with an interest in the outcome of this litigation.

65.     Additionally, Defendants GSK and McNeil have their principal places of business in Pennsylvania. All Class members—even those who never set foot in Pennsylvania but purchased Decongestant Products—directly implicate Pennsylvania's interest in regulating businesses and commerce.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 P.S. § 201-1 *et seq.*
### (All Defendants)

66.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-63, as if fully set forth herein.

67.     Plaintiffs bring this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count).

68.     At all relevant times, Plaintiff, Class members, and Defendants were each a "person" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL"). 73 P.S. § 201-2(2) & (11).

69.    At all relevant times, Defendants were engaged in "trade" or "commerce" within the meaning of the Pennsylvania UTPCPL. 73 P.S. § 201-2(3).

70.    The Pennsylvania UTPCPL prohibits "any…fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). Defendants participated in unfair and deceptive trade practices that violated the Arizona CFA. As alleged herein, Defendants each sold Decongestant Products to Plaintiff and each Class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective at safe dosages when consumed orally.

71.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts: (a) had a tendency or capacity to mislead and create a false impression in consumers; and (b) were likely to and did deceive reasonable consumers, including Plaintiff, about the effectiveness of phenylephrine and the true value of the Decongestant Products Defendants sold.

72.    Defendants knew or should have known that their conduct violated the Pennsylvania UTPCPL and intended that Plaintiff and Class members rely on their concealments, omissions, and suppressions of material facts.

73.    Plaintiff and Class members did justifiably rely on Defendants concealments, omissions, and suppressions of material facts with respect to the Decongestant Products.

74.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Class members were deceived into paying artificially inflated prices for Defendants' Decongestant Products and have been damaged thereby.

75.    Plaintiff and Class members are each entitled to recover actual damages or $100, whichever is greater. 73 P.S. § 201-9.2(a).

76.     Plaintiff and Class members also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorney fees, costs, and any other just and proper relief available under the Pennsylvania UTPCPL. Additionally, Plaintiff and Class members seek punitive damages.

77.     Pennsylvania has numerous contacts with the conduct alleged herein and a strong interest in applying the Pennsylvania UTPCPL to that conduct. Defendants are found, do business, or transact business within this District. Defendants' improper conduct set forth herein occurred in this District or was conceived of and executed from this District in whole or in part. Defendants GSK and McNeil have their principal places of business in the United States in this District, and their pricing, sales, and distribution operations for its Decongestant Products sold throughout the United States, which form the basis of this litigation, originate from and/or are controlled by, their offices in this District.

78.     As such, Pennsylvania's contacts to this litigation make it a desirable forum for this litigation and Pennsylvania's interest in applying the Pennsylvania UTPCPL in this litigation outweighs any interests other states or their laws may have.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (All Defendants)

79.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-63, as if fully set forth herein.

80.     Plaintiffs bring this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count).

81.     At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code ("U.C.C.") governing the implied warranty of merchantability and fitness for ordinary purpose.[6]

82.     Defendants were at all times a "merchant" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

83.     The Decongestant Products are and were "goods" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

84.     Defendants were obligated to provide Plaintiffs and the other Class members Decongestant Products that were of merchantable quality, were reasonably fit for the purpose for which they were sold, and conformed to the standards of the trade.

85.     Defendants impliedly warranted that those drugs were of merchantable quality and fit for that purpose.

86.     Defendants breached their implied warranties, because their Decongestant Products were not of merchantable quality or fit for their ordinary purpose.

---

[6]     *See, e.g.*, Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84- 2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. Art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2- 314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382- A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

87.    Defendants' breaches of implied warranties were a direct and proximate cause of Plaintiffs' and the other Class members' damages.

## COUNT III
## FRAUD BY OMISSION OR CONCEALMENT
### (All Defendants)

88.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-63, as if fully set forth herein.

89.    Plaintiffs bring this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count).

90.    Defendants intentionally and knowingly falsely concealed, suppressed and/or omitted material facts including as to the standard, quality or grade of the Decongestant Products. Due to their fraudulent conduct, Plaintiffs and the other Class members have suffered actual damages.

91.    Defendants knew that phenylephrine is ineffective at safe dosages when consumed orally.

92.    Defendants were obligated to inform Plaintiff and the other members of the Class of the effectiveness of phenylephrine due to their exclusive and superior knowledge of the Decongestant Products. Plaintiffs and other Class members also expressly reposed a trust and confidence in Defendants because the nature of their dealings as healthcare entities and with Plaintiffs and other members of the Class as their consumers.

93.    Plaintiffs and the other Class members would not have purchased the Decongestant Products but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Decongestant Products and existence of the Decongestant Products, or would have paid less for the Decongestant Products.

94.     Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts.

95.     Defendants acted with malice, oppression, and fraud.

96.     Plaintiffs and the other Class members reasonably relied on Defendants' knowing, affirmative, and active false concealment and omissions. As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Decongestant Products, Plaintiffs and the other Class members have suffered actual damages in an amount to be determined at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(All Defendants)**

97.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-63, as if fully set forth herein.

98.     Plaintiffs brings this claim on behalf of the nationwide Class or, in the alternative, the State Classes (the "Class," for purposes of this Count).

99.     There are no material differences in the elements of the unjust enrichment cause of action in the various states. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, Illinois law applies to those claims.

100.     Defendants' efforts include, but are not limited to, providing point-of-sale materials and coupons to entice Plaintiffs and the other Class members to purchase Decongestant Products.

101.    It would be inequitable for Defendants to insulate themselves from liability on this unjust enrichment claim by asserting that retail sales by their retailers cuts off any relationship between Plaintiffs and the Classes and Defendants because Plaintiffs and the other Class members cannot seek a remedy directly from Defendants' retailers based on Defendants' sale of the Decongestant Products.

102.    Plaintiffs and all other Class members conferred a benefit on Defendants by purchasing Decongestant Products.

103.    Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of Decongestant Products, which retention under these circumstances is unjust and inequitable because Defendants sold the Decongestant Products as purportedly effective for providing congestion relief when in fact they were not, which caused injuries to Plaintiffs and all Class members because they paid a price premium due to Defendants' deception.

104.    Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and all Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

105.    Plaintiffs and Class members have no adequate remedy at law.

### COUNT V
### VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
### A.R.S. § 44-1521 *et seq.*
### (GSK, Kenvue, McNeil, P&G, and Reckitt)

106.    Plaintiff Contreras ("Plaintiff," for purposes of this Count) repeats and realleges paragraphs 1-63 as if fully set forth herein.

107.    Plaintiff brings this claim on behalf of the Arizona Class (the "Class," for purposes of this Count) against Defendants GSK, Kenvue, McNeil, P&G, and Reckitt (the "Defendants," for purposes of this Count).

108.    At all relevant times, Plaintiff, Class members, and Defendants were each a "person" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), A.R.S. § 44-1521(6).

109.    The Decongestant Products are "merchandise" within the meaning of the Arizona CFA, A.R.S. § 44-1521(5).

110.    Plaintiff's and Class members' purchases of Decongestant Products were each a "sale" within the meaning of the Arizona CFA, A.R.S. § 44-1521(7).

111.    The Arizona CFA prohibits

[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby…."

A.R.S. § 44-1522(A). Defendants participated in unfair and deceptive trade practices that violated the Arizona CFA. As alleged herein, Defendants sold Decongestant Products as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective at safe dosages when consumed orally.

112.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts: (a) had a tendency or capacity to mislead and create a false impression in consumers; and (b) were likely to and did deceive reasonable consumers, including Plaintiff, about the effectiveness of phenylephrine and the true value of the Decongestant Products Defendants sold.

113.    Defendants knew or should have known that their conduct violated the Arizona CFA and intended that Plaintiff and Class members rely on their concealments, omissions, and suppressions of material facts.

23

114.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Class members were deceived into paying artificially inflated prices for Defendants' Decongestant Products and have been damaged thereby.

115.    Plaintiff and Class members are entitled to recover restitution under A.R.S. § 44-1528(A)(2).

116.    Plaintiff and Class members also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, costs, and any other just and proper relief available under the Arizona CFA. Additionally, Plaintiff and Class members seek punitive damages.

## COUNT VI
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT ("ICFA")
### 815 Ill. Comp. Stat. Ann. 505/1 *et seq.*
### (GSK, Kenvue, McNeil, P&G, and Reckitt)

117.    Plaintiff Freeman ("Plaintiff," for purposes of this Count) repeats and re-alleges the allegations contained in Paragraphs 1-63, as if fully set forth herein.

118.    Plaintiff brings this claim on behalf of the Illinois Class (the "Class," for purposes of this Count), against Defendants GSK, Kenvue, McNeil, Procter & Gamble, and Reckitt (the "Defendants" for purposes of this Count).

119.    At all relevant times, Plaintiff, Class members, and Defendants were each a "person," as defined by 815 Ill. Comp. Stat. Ann. 505/1(c), and satisfy the consumer nexus test in that Defendants' unfair and deceptive acts and practices regarding the Decongestant Products.

120.    The Decongestant Products were directed at and impacted the market generally and/or otherwise implicate consumer protection concerns. Defendants' unfair and deceptive acts and practices have impacted at least hundreds of thousands of consumers nationwide and in Illinois and remedying Defendants' wrongdoing through the relief requested herein would serve the interests of consumers.

24

121.     At all relevant and material times, Defendants' wrongdoing alleged herein occurred in the conduct of "trade" and "commerce" as defined in the Illinois CFA where Defendants' unfair and deceptive acts and practices regarding the Decongestant Products occurred during and related directly to the routine purchase and sale of Decongestant Products at retail outlets and/or online. 815 Ill. Comp. Stat. Ann. 505/1(f).

122.     Under the Illinois CFA, the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. Ann. 510/2, in the conduct of any trade or commerce is unlawful whether any person has, in fact, been misled, deceived, or damaged thereby.

123.     Under Section 2 of the UDTPA, 815 Ill. Comp. Stat. Ann. 510/2, a "person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, the person … (12) engages in any … conduct which … creates a likelihood of confusion or misunderstanding."

124.     Plaintiff and the members of the Class have suffered losses because of Defendants' employment of unfair or deceptive acts and practices. As alleged herein, Defendants each sold Decongestant Products to Plaintiff and each Class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective at safe dosages when consumed orally.

125.     Defendants accordingly willfully engaged in the unfair and deceptive acts and practices described above and knew or should have known that those acts and practices were unfair and deceptive and in violation of the Illinois CFA.

126.     This deception alleged herein occurred in connection with Defendants' conduct of trade and commerce in Illinois.

127.    Defendants intended for Plaintiff and the members of the Class to purchase Decongestant Products in reliance upon Defendants' unfair and deceptive acts and practices.

128.    Defendants' conduct offends public policy as set forth in 225 Ill. Comp. Stat. Ann. 85/1 & 41 and Ill. Admin. Code tit. 89, §§ 140.445, 140.447(b), and is immoral, unethical, oppressive, or unscrupulous as described herein and caused substantial injury to consumers, competitors, or other business. Defendants' unjustified, inflated pricing of their Decongestant Products is oppressive because it overcharges consumers. The pricing of Decongestant Products is unethical and unscrupulous because it is the result of Defendants' desire to achieve maximum financial gain for medicine used by consumers whose medical conditions may require such medicine.

129.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and the members of the Class were deceived into paying artificially inflated prices for Defendants' Decongestant Products and have been damaged thereby.

130.    Defendants are therefore liable to Plaintiff and the members of the Class for the damages they sustained, plus statutory damages, penalties, costs, and reasonable attorneys' fees to the extent provided by law.

131.    Plaintiff is entitled to injunctive and declaratory relief under the Illinois CFA because Defendants' violations of the Illinois CFA continue unabated and there is no adequate remedy at law to stop Defendants' conduct.

### COUNT VII
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### (GSK, Kenvue, McNeil, and P&G)

132.    Plaintiff Benjamin ("Plaintiff," for purposes of this Count) repeats and re-alleges the allegations contained in Paragraphs 1-63, as if fully set forth herein.

133.    Plaintiff brings this claim on behalf of the New York Class (the "Class," for purposes of this Count), against Defendants GSK, Kenvue, McNeil, and Procter & Gamble (the "Defendants" for purposes of this Count).

134.    The New York General Business Law ("New York GBL") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce…." N.Y. GBL § 349(a). Defendants participated in unfair and deceptive trade practices that violated the New York GBL. As alleged herein, Defendants each sold Decongestant Products to Plaintiff and each Class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective at safe dosages when consumed orally.

135.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts: (a) had a tendency or capacity to mislead and create a false impression in consumers; and (b) were likely to and did deceive reasonable consumers, including Plaintiff, about the effectiveness of phenylephrine and the true value of the Decongestant Products Defendants sold.

136.    Defendants knew or should have known that their conduct violated the New York GBL.

137.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Class members were materially misled and deceived into paying artificially inflated prices for Defendants' Decongestant Products and have been damaged thereby.

138.    Plaintiff and Class members are each entitled to recover no less than actual damages or $50, whichever is greater, and at most treble actual damages up to $1,000. N.Y. GBL § 349(h).

139.    Plaintiff and Class members also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorney fees, costs, and any other just and

proper relief available under the New York GBL. Additionally, Plaintiff and Class members seek punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgement in their favor and against Defendants, as follows:

A.      Certification of the proposed Classes and appointment of Plaintiffs as Class representatives;

B.      Appointment of Plaintiffs' counsel as Class Counsel;

C.      Injunctive relief, including, but not limited to:

1.      A requirement for Defendants to make full disclosure of their knowledge of the efficacy of their Decongestant Products;

2.      Disgorgement of their profits from the sales of their Decongestant Products;

3.      Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

4.      An order requiring Defendants to pay both pre- and post-judgment interest on all amounts awarded;

D.      An award of costs and attorneys' fees; and

E.      Such other further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims so triable.


Dated:  October 3, 2023

                      Respectfully submitted,

| | |
|---|---|
| | */s/ Scott A. George* |
| Adam J. Levitt | Scott A. George |
| John E. Tangren | **SEEGER WEISS LLP** |
| Daniel R. Schwartz | 325 Chestnut Street, Suite 917 |
| Blake Stubbs | Philadelphia, PA 19106 |
| **DICELLO LEVITT LLP** | Telephone: (215) 564-2300 |
| Ten North Dearborn Street, Sixth Floor | sgeorge@seegerweiss.com |
| Chicago, Illinois 60602 | |
| Telephone: (312) 214-7900 | Christopher A. Seeger |
| alevitt@dicellolevitt.com | David R. Buchanan |
| jtangren@dicellolevitt.com | Scott A. George |
| dschwartz@dicellolevitt.com | **SEEGER WEISS LLP** |
| bstubbs@dicellolevitt.com | 55 Challenger Road, 6th Floor |
| | Ridgefield Park, New Jersey 07660 |
| James E. Cecchi | Telephone: (973) 639-9100 |
| Donald A. Ecklund | cseeger@seegerweiss.com |
| Jordan M. Steele | dbuchanan@seegerweiss.com |
| **CARELLA, BYRNE, CECCHI,** | sgeorge@seegerweiss.com |
|   **BRODY & AGNELLO, P.C.** | |
| 5 Becker Farm Road | Paul J. Geller |
| Roseland, New Jersey 07068 | Stuart A. Davidson |
| Telephone: (973) 994-1700 | **ROBBINS GELLER RUDMAN** |
| jcecchi@carellabyrne.com |   **& DOWD LLP** |
| decklund@carellabyrne.com | 225 NE Mizner Boulevard, Suite 720 |
| jsteele@carellabyrne.com | Boca Raton, Florida 33432 |
| | Telephone: (561) 750-3000 |
| | pgeller@rgrdlaw.com |
| | sdavidson@rgrdlaw.com |


*Counsel for Plaintiffs and the Proposed Classes*

29